# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE ELICE FONTAINE,<br><br>                    Plaintiff,<br>    vs.<br>BANK OF AMERICA, N.A., a/k/a FIRST MAGNUS FINANCIAL CORPORATION, A DIVISION OF BANK OF AMERICA, N.A. and f/k/a FIRST MAGNUS FINANCIAL CORPORATION; THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDER OF CWMBS, INC. CHL MORTGAGE PASS THROUGH TRUST 2006-3, MOTGAGE PASS THROUGH CERTIFICATE SERIES 2006; MERSCORP HOLDINGS, INC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS); RECONTRUST COMPANY, N.A.; CLEAR RECON CORP; and DOES 1 through 10 inclusive,<br><br>                    Defendants. | CASE NO. 14cv1944-WQH-DHB<br><br>ORDER |

HAYES, Judge:

The matter before to Court is Defendants' Motion to Dismiss Plaintiff's Petition. (ECF No. 13).

## I. BACKGROUND

On August 20, 2014, Plaintiff initiated this action by filing a Complaint against Defendants Bank of America, N.A., The Bank of New York Mellon, Merscorp Holdings, INC., Mortgage Electronic Registrations Systems, Inc ("MERS"), ReconTrust Company, N.A., Clear Recon Corp., and Does 1 through 10. (ECF No 1).

On October 20, 2014, Defendants Bank of America, N.A., The Bank of New York Mellon, MERS, and ReconTrust Company filed the Motion to Dismiss Plaintiff's Complaint Petition. (ECF No. 13). On November 12, 2014, Plaintiff filed an opposition. (ECF No. 16). On November 21, 2014, Defendants' filed a reply. (ECF No. 17).

On November 24, 2014, Defendant Clear Recon Corp. filed a Notice of Joinder to Defendants' Motion to Dismiss Plaintiff's Petition adopting and incorporation the contents of the Defendants' Motion to Dismiss. (ECF No. 18).

## II. ALLEGATIONS OF COMPLAINT

"The Plaintiff signed [the] Security Instrument (Deed of Trust) in favor of FIRST MAGNUS FINANCIAL CORPORATION ("First Magnus") on or about November 17, 2005." (ECF No. 1 ¶ 20). "Since that time a number of parties have come forward indicating that loan payments should now be sent to an entity other than the original lender, First Magnus." *Id.* ¶ 21. "[S]ubsequent to the financial meltdown in October 2008, ... Plaintiff began to query her alleged lender as to identify [] the lawful owners of [her] loan and determine whether the Plaintiff would ever receive clear and marketable title to her home once it was paid off." *Id.* ¶ 22. "The subsequent responses from the alleged lender(s) were vague and ambiguous and did not answer the bona fide and lawful question of the Plaintiff." *Id.* ¶ 23. "Subsequently, the Plaintiff used the only mechanism available to [her] which was to withhold payments until which time the lawful owner and creditor of the loan could be identified without a reasonable doubt." *Id.* ¶ 24.

"In April 2011, [BofA] signed the OCC Consent Order, # AA-EC-11-12, with

the Comptroller of the Currency of the United States of America ("Comptroller") after an examination by the OCC in which the OCC identified numerous deficiencies and unsafe and unsound practices in residential mortgage servicing and in [] CITIGROUP's initiation and handling of foreclosure proceedings." *Id*. ¶ 32. "Subsequently, the ... Order was amended ... which in part provided for cash payments for homeowners that had been violated by the bank's unsafe and unsound business practices..." *Id*. ¶ 33. "Plaintiff is a homeowner who is a beneficiary to the OCC Consent Order, whose rights have been violated pursuant to state and federal law..." *Id*. ¶ 39.

"In April 2012[,] BANK OF AMERICA CORPORATION ("BofA") entered into an agreement (NMS Consent Order) ... and agreed to fundamentally change their egregious and unlawful business practices that were severely harming the homeowners of this country." *Id*. ¶ 26. "Plaintiff ... is a beneficiary to the covenants of the Court order ... to refrain from foreclosing on homeowners property when they do not have a documented property interest in the note and mortgage or deed of trust." *Id*. ¶ 31.

"The Defendants and their agents have violated the terms of the OCC Consent Order and the NMS Consent Order ("Consent Orders") by continuing to obfuscate the true legal holder of the Note and Deed of Trust and creating a scenario in which the Plaintiff cannot benefit from clear and marketable title without resorting to extraordinary measures." *Id*. at 40.

"Plaintiff's mortgage loan has been securitized." *Id*. ¶ 61. "No language within [] Plaintiff's Deed of Trust or Note indicated that the mortgage loan would be securitized..." *Id*. ¶ 63. "The rights to the Plaintiff's Intangible Obligation have [] allegedly been conveyed as a Transferable Record to multiple classes of the CWHL Trust." *Id*. ¶ 87. "Multiple classes of the CWHL Trust are allegedly making claims of [] rights to [] Plaintiff's Intangible Obligation. However, to exercise those claims of [] rights to the Plaintiff's Intangible Obligation, assignments of the Plaintiff's Deed of Trust should have been accomplished, which were not effectuated." *Id*. ¶ 93. "The assignment of the Plaintiff's Deed of Trust is a conveyance of an instrument concerning

real property which must be recorded to be acted upon." *Id*. ¶ 94.

"There are no recorded assignments of the Plaintiff's Deed of Trust from First Magnus to multiple classes of the CWHL Trust within 30 days of the January 31, 2006 closing date ..., either [there] have been a violation of Federal Law or multiple classes of the CWHL Trust, who are allegedly the owners of the Plaintiff's obligation are not the owners of [] either the Plaintiff's Note or Deed of Trust..." *Id*. ¶ 98.

"Multiple classes of the CWHL Trust are allegedly the owners of the Plaintiff's Intangible Obligation, however, according to California State Law, multiple classes of the CWHL Trust can only be entitled to enforce the Plaintiff's Deed of Trust if multiple classes of the CWHL Trust were transferred the rights to the Plaintiff's Deed of Trust by way of assignments pursuant to California Government Code Section 27288.1 and California Civil Code Section 1213. *Id*. ¶ 103.

"In contradiction to law, Plaintiff's Deed of Trust must have been duly assigned to multiple classes of the CWHL 2006-3 Trust for multiple classes of the CWHL 2006-3 Trust to be entitled to enforce the Plaintiff's Deed of Trust." *Id*. ¶ 104.

"For all three parts of the Plaintiff's Loan as a whole to have been transferred into the CWHL Trust there is a chain of entities through which the Plaintiff's Deed of Trust must be assigned and the Plaintiff's Note indorsed." *Id*. ¶ 111. "This chain of transfer as required in the CWHL Trust Pooling and Servicing Agreement ("PSA") is to have begun with a recorded assignment of the Plaintiff's Deed of Trust and an indorsement of the Plaintiff's Note from the Lender, First Magnus ... to the Seller Countrywide Home Loan, Inc. Once the Seller (Countrywide Home Loans, Inc.) had taken complete ownership, then a recorded assignment of the Plaintiff's Deed of Trust and indorsement of the Plaintiff's Note form the Seller (Countrywide Home Loans, Inc.) to the Depositor (CWMBS, Inc.) was to have occurred. After the Depostior (CWMBS, Inc.) had taken complete ownership, a recorded assignment of the Plaintiff's Deed of Trust and an indorsement of the Plaintiff's Note from the Depositor (CWMBS, Inc.) to the Trustee (The Bank of New York) was to have occurred next. Finally, once the Trustee (The

Bank of New York) had taken complete ownership, a recorded assignment of the Plaintiff's Deed of Trust and an indorsement of the Plaintiff's Note from the Trustee to the [CWHL Trust] was to have occurred." *Id.* ¶ 112.

"Moreover, these assignments were to all be recorded in the official records of San Diego County, California Registry as per the [PSA] for the CWHL Trust, these required assignments were not effectuated." *Id.* ¶ 113. "[A]ny electronic transfers of the Plaintiff's Deed of Trust that may have been executed without recording within the Official records of the San Diego County Registry are void pursuant to the Uniform Electronic Transactions Act (UETA) USC §15-96-1-7003." *Id.* ¶ 115.

The Complaint alleges the following six claims: (1) intentional non-disclosure; (2) missing public recording assignments & violation of California law; (3) breach of contract; (4) violations of the NMS and OCC consent orders; (5) vilations of 15 U.S.C. 41 § 1641; and (6) violations of the Uniform Electronic Transactions Act (UETA) 15 U.S.C. 96 § 7003.

### III. DISCUSSION

#### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Depot*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009). "Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir.2003). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

**B.    Analysis**

**I.    Rule 8(a)**

Defendants contend that Plaintiff has not asserted a single, coherent cause of action which attempts to connect any of the Defendants to any alleged wrongdoing. Defendants contend that Plaintiff's Complaint lumps all Defendants together and fails to specify specific actions by each of them. Defendants contend that Plaintiff's pleadings fail to comply with Rule 8(a) of the Federal Rules of Civil Procedure, which requires that complaints contain sufficient detail to place defendants on notice of the acts in which they are alleged to have engaged. Defendants contend that they are not on sufficient notice of any improper acts which they are alleged to have engaged in. Defendants contend that apart from conclusory allegations of breach of contract, violations of the NMS and OCC Consent Orders, violations of the Fair Debt Collection Practices Act, and violations of the Uniform Electronic Transactions Act, it is unclear which laws or standards have been violated, and how they have allegedly been violated. Defendants contend that Plaintiff fails to properly plead any cause of action, and her causes of action are unsupported by "factual enhancement." (ECF No. 13-1 at 8).

Plaintiff does not address contention in her response to Defendants' Motion to Dismiss. *See* ECF No. 16.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short

and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The complaint must include "sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991). "Something labeled a complaint ... yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996). "When a plaintiff asserts multiple claims against multiple defendants, this fair notice standard requires that the allegations in the complaint must show which defendants are liable to the plaintiff for which wrongs." *In re Tevis*, No. ADV. 08-2004, 2011 WL 7145712, at *8 (B.A.P. 9th Cir. Dec. 9, 2011).

In this case, Plaintiff's Complaint does not indicate the alleged wrongful act performed by each Defendant, preventing Defendants from responding to the allegations. Under each cause of action, Plaintiff's Complaint alleges actions taken by "Defendant's [sic], *et al.*, ..." (ECF No. 1 ¶¶ 219, 222, 225, 228, 230, 231, 233, 236, 237). The Court concludes that Plaintiff has failed to comply with Rule 8. Defendants' motion to dismiss the Complaint pursuant to Rule 8 is granted. In addition, Plaintiff's first, second, fourth, fifth, and sixth claims warrant dismissal for the reasons discussed below.

## II.     Intentional Non-Disclosure (First Claim)

Plaintiff's first claim alleges intentional non-disclosure. Plaintiff alleges that she was "enticed into a mortgage loan contract with First Magnum whereas no language within the Plaintiff's Mortgage or Note stated that the mortgage would be securitized and investment grade securities would be created form the Plaintiff's Mortgage through dividing and pooling in an MBS." (ECF No. 1 ¶ 217). "Plaintiffs were not informed nor is there verbiage within the Plaintiff's Mortgage or Note that Plaintiff would become a 'party' to a complex securitization transaction." *Id.* ¶ 218. "Defendants, *et al.*, knowingly and wittingly had premeditated knowledge of the complex securitization

1 transaction and did not disclose such to the Plaintiff at any time prior or subsequent to
2 the loan application or loan origination." *Id.* ¶ 219. "These acts have harmed the
3 Plaintiffs, slandered title to the property and damaged the marketability of said title."
4 *Id.* ¶ 220.

5        Defendants contend that Plaintiff fails to allege how she is a party to a securitization transaction, or how her obligations under her loan documents were or could have been affected in any way by securitization of the loan. (ECF No. 13-1 at 8). Defendants further contend that Plaintiff did have notice that the Loan could be sold. Plaintiff does not address these contentions in her opposition to Defendants' Motion to Dismiss. *See* ECF No. 16.

11        Borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity. *See Marques v. Fed. Home Loan Mortg. Corp.*, No. 12-CV-2373-GPC, 2012 WL 6091412, at *4 (S.D. Cal. Dec. 6, 2012) ("District courts have held that borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity because they had not alleged a concrete and particularized injury that is fairly traceable to the challenged assignment.") (internal citations omitted); *Bascos v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor [in] the loan trust."); *Nguyen v. Bank of Am. Nat'l Ass'n*, No. 11-CV-03318-LHK, 2011 WL 5574917, at *9 (N.D. Cal. Nov. 15, 2011) ("[C]ourts have uniformly rejected the argument that securitization of a mortgage loan provides the mortgagor with a cause of action.").

26        Even if Plaintiff had standing to challenge the securitization of her loan, the securitization theory fails when Plaintiffs have signed a Deed of Trust which provides that the note or a partial interest in the note may be sold. *See Fores v. GMAC*

*Mortgage, LLC*, 2013 WL 2049388, at *3 (N.D. Cal. May 14, 2013) ("Here, the securitization theory also fails because plaintiff Irene Flores agreed that her Promissory Note, and partial interests in the Note, could be sold.  Likewise, plaintiff Irene Flores signed the deed of trust, which provides that '[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.'")

In this case, Section 20 of the Deed of Trust signed by Plaintiff states: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  (ECF No. 1-1, Exh. 1 ¶ 20).  The Court finds that Plaintiff signed a Deed of Trust which allowed Defendants to sell the note or a partial interest in the note.  Plaintiff's claim for intentional non-disclosure is dismissed.

### III.    Missing Recorded Documents (Second Claim)

Plaintiff's second claim alleges missing public recording assignments and violation of California law.  Plaintiff alleges that "Multiple classes of the CWHL 2006-3 Trust are allegedly the owners of the Plaintiff's Intangible Obligation, however, according to California State Law, multiple classes of the CWHL 2006-3 Trust can only be entitled to enforce the Plaintiff's Deed of Trust if multiple classes of the CWHL 2006-3 Trust were transferred the rights to the Plaintiff's Deed of Trust by way of assignments pursuant to ... California Government Code Section 27288.1," and "Cal. Civ. Code § 1213."  (ECF No. 1 ¶ 103). Plaintiff alleges that ownership of the property was transferred to the Seller Countrywide Home Loans, Inc., the Depositor CWMBS, Inc., the Trustee The Bank of New York, and the CHL MORTGAGE PASS THROUGH TRUST 2006-3 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-3 (CWHL 2006-3).  (ECF No. 1 ¶ 112).  Plaintiff alleges that "these assignments were to all be recorded in the official records of the San Diego, California Registry as per the Pooling and Servicing Agreement (PSA) for the CWHL 2006-3 Trust, these required assignments were not effectuated."  (ECF No. 1 at ¶ 113).

(ECF No. 1 ¶¶ 112-13). Plaintiff alleges that "Defendants, *et al*., knowingly and wittingly with premeditated knowledge did violate California law by refusing to record required mortgage assignments in an attempt to obfuscate the true nature of the Plaintiff's mortgage loan." (ECF No. 1 ¶ 222). "These acts have harmed the Plaintiffs, slandered title to the property and damages the marketability of said title." *Id*. ¶ 223.

Defendants contend Plaintiff does not identify with specificity which assignments she alleges are missing, or how recordation of any assignments affects her obligation to repay the Loan under any circumstance. Defendants contend that "granting a generous reading of the Complaint, Defendants assume Plaintiff is referring to Paragraphs 103-118 of the Complaint, in which she appears to allege that pursuant to the CWHL [] Trust Pooling and Servicing Agreement [], Defendants should have recorded certain assignment documents that she alleges were not recorded." (ECF No 13-1 at 10). Defendants contend that Plaintiff lacks standing to challenge the pooling service agreement. *Id*. at 10-11.

Plaintiff does not address these contentions in her opposition to Defendants' Motion to Dismiss. *See* ECF No. 16.

To the extent Plaintiff alleges Defendants violated California state law by not recording documents, the Court finds that Plaintiff does not allege sufficient facts to permit the reasonable inference that Plaintiff is entitled to relief. *See Moss*, 572 F.3d at 969. Plaintiff's claim does not identify facts to show Defendants violated California Government Code section 27288.1 and California Civil Code section 1213. The cited recording statute establishes only what must be contained in a recorded document. Cal. Gov. Code § 27288.1.[1] The cited assignment statute establishes only the process by which a document may be recorded and the effect of recordation. *See* Cal. Civ. Code

---

[1] California Governmental Code § 27288.1 provides: "All documents described in this section ... shall contain the following information in addition to any information as may be required by law pertaining to the particular document: If the document effects or evidences a transfer or encumbrance of an interest in real property, the name or names in which the interest appears of record, ..., shall show the name or names of the assessed owners as they appear on the latest secured assessment roll." Cal. Gov. Code § 27288.1.

§ 1213.[2]

To the extent Plaintiff alleges Defendants violated the pooling and servicing agreement, this Court has found that a non-party to a pooling and servicing agreement lacks standing to bring claims alleging a violation of the pooling and servicing agreement. *See Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12-CV-2106-WQH, 2014 WL 2217930, at *14 (S.D. Cal. May 29, 2014) ("The First Amended Complaint alleges that the purported assignments of the loan did not comply with the rules of the relevant pooling and servicing agreement.... The Court concludes that the First Amended Complaint fails to adequately allege that Plaintiff has standing to challenge the assignments.").

The Court finds that Plaintiff does not have standing to challenge the PSA. Plaintiff's claim for missing recorded documents is dismissed.

### IV.   Violation of the Consent Orders (Fourth Claim)

Plaintiff's fourth claim alleges violations of the National Mortgage Settlement ("NMS") and OCC consent orders. Plaintiff alleges that "Defendants, *et al.*, have violated the terms of the NMS and OCC Consent Orders by engaging in unsafe banking practices to the detriment of the Plaintiff." (ECF No. 1 ¶ 228). "Plaintiff's title has been slandered and the marketability of their title is severely affected due to the numerous violations of the NMS & OCC Consent Orders by the Defendant's, *et al.*" *Id.* ¶ 229. "Defendants, *et al.*, continue to willfully obfuscate the truth regarding the legal holder and owner of the Note and Mortgage in violation of the NMS & OCC Consent Orders." *Id.* ¶ 230. "Defendants, *et al.*[,] continue actions to foreclose on the Plaintiffs in

---

[2] California Civil Code § 1213 provides: "Every conveyance of real property ... acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees; and a certified copy of such recorded conveyance may be recorded in any other county and when so recorded ... shall have the same force and effect as though it was of the original conveyance and where the original conveyance has been recorded in any county wherein the property therein mentioned is not situated a certified copy of the recorded conveyance may be recorded in the county where such property is situated with the same force and effect as if the original conveyance had been recorded in that county." Cal. Civ. Code § 1213.

egregious violation to the NMS & OCC Consent Orders." *Id*. ¶ 231.

Defendants contend that Plaintiff does not have standing to enforce the NMS Consent Judgment between the United States of America, 49 state attorneys general, and Bank of America, N.A., et al. *United States of America v. Bank of America Corporation, et al.*, no. 12-cv-00361, (D.D.C. Apr. 5, 2012). Defendants contend that Plaintiff is not a party to the National Mortgage Settlement, and therefore cannot state a claim for breach of contract, or otherwise sue to enforce its terms. Defendants contend that the terms of the National Mortgage Settlement specifically provide for its comprehensive enforcement by "any Party to this [agreement] or the Monitoring Committee," *Id*. Ex. E at 15 (§ J.2), indicating that there is no private right of action for allegedly aggrieved borrowers. Defendants contend that the terms of the National Mortgage Settlement make clear that analyses of whether BANA is in compliance with, or in violation of, the agreement—and, in particular, the Servicing Standards, set forth in Exhibit A—are to be determined by a series of Metrics, identified and defined in the agreement itself and subject to oversight by an independent Monitor. *Id*. Exh. E (§ C.11).

Defendants further contend that Plaintiff does not have standing to enforce the Office of the Comptroller of the Currency (OCC) Consent Order because she is not a party to the agreement or a third party beneficiary. Defendants contend that a consent order is a negotiated agreement that is given the status of a judicial decree.

Plaintiff does not address these contentions in her opposition to Defendants' Motion to Dismiss. *See* ECF No. 16.

With respect to the NMS Consent Judgment, this Court addressed the same argument in *Jurewitz v. Bank of Am., N.A.*, 938 F. Supp. 2d 994, 998 (S.D. Cal. 2013). In that case, the Plaintiff brought a breach of contract claim based on the same NMS Consent Judgment. This Court stated:

> The Consent Judgment at issue contains a provision entitled, "Enforcement," which states: "[Bank of America]'s obligations under this Consent Judgment shall be enforceable solely in the U.S. District Court for the District of Columbia. An enforcement action under this Consent

|   |   |
|---|---|
| 1 | Judgment may be brought by any Party to this Consent Judgment or the Monitoring Committee." (ECF No. 1-3 at 18). The Consent Judgment establishes "Servicing Standards Quarterly Compliance Metrics," which the Monitoring Committee reviews to determine whether Bank of America is complying with the Consent Judgment. *Id.* at 22; *see also Id.* at 8. The enforcement provisions of the Consent Judgment describe financial punishments for violating the agreement as "civil penalties," and split the penalties between the United States and the 49 state parties. *Id.* at 19-20. The Consent Judgment contains no provisions referencing the possibility of an enforcement proceeding brought by an individual borrower as a third-party beneficiary. The Consent Judgment contains no provisions referencing the possibility of an enforcement proceeding brought by any party or person in a court other than the United States District Court for the District of Columbia. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | The Court finds that the "precise language" of the Consent Judgment does not establish "a clear intent to rebut the presumption that the third parties [to the Consent Judgment] are merely incidental beneficiaries." *Astra USA, Inc.*, 588 F.3d at 1244. Accordingly, the Court concludes that Plaintiff has failed to allege sufficient facts indicating that she has standing to enforce the Consent Judgment. |
| 10 | |
| 11 | |

*Jurewitz v. Bank of Am., N.A.*, 938 F. Supp. 2d 994, 997-98 (S.D. Cal. 2013). The Court adheres to its prior Order addressing these same arguments and finds that the precise language of the Consent Judgment does not establish a clear intent to rebut the presumption that the third parties to the Consent Judgment are merely incidental beneficiaries. The Court concludes that Plaintiff does not have standing to enforce the terms of the NMS Consent Judgment.

With respect to Plaintiff's alleged violations of the OCC Consent Order, Exhibit 4, labeled "OCC Consent Order'" is an amendment to Article VII of the OCC Consent Order. *See* ECF No. 1-1 at 47, Exh. 4 ("Article VII of the 2011 Consent Order is hereby superseded by this Amendment to the Consent Order. This Amendment to the Consent Order, however, does not replace the other remaining Articles of the 2011 Consent Order ... which shall remain in effect without modification."). Without the Consent Decree, the Court cannot determine whether the precise language of the OCC Consent Order is sufficient to establish a clear intent to rebut the presumption that Plaintiff is merely an incidental beneficiary. The "precise language" of the amendment does not establish "a clear intent to rebut the presumption that the third parties to the Consent Judgment are merely incidental beneficiaries." *See Astra USA, Inc.*, 588 F.3d

at 1244. The amendment states that "[w]ithin (15) days of the Amendment to the Consent Order, the Bank ... will make a cash payment of $1,127,453,261.00 into a Qualified Settlement Fund ... from which payments to the In-Scope Borrower Population, which are borrowers who had a pending or completed foreclosure on their primary residence any time from January 1, 2009 to December 31, 2010, will be made..." (ECF No 1-1 at 49). The Complaint does not allege that Plaintiff's primary residence was subject to a pending or completed foreclosure between January 1, 2009 and December 31, 2010. In fact, Exhibit 9, labeled "Notice of Default," is dated September 9, 2011. *See* ECF No. 1-1 at 105. The Court concludes that Plaintiff does not allege sufficient facts to establish her standing to enforce the terms of the OCC Consent Order. Plaintiff's violation of the consent orders claim is dismissed.

## V.     Violation of the Truth in Lending Act ("TILA") (Fifth Claim)

Plaintiff's fifth claim alleges violations of the Truth in Lending Act ("TILA") 15 U.S.C. § 1641. Plaintiff alleges that "Defendants, *et al*., violated 15 USC Chapter 41 § 1641(g) and did not disclose the new creditor as required by law." (ECF No. 1 ¶ 233). Plaintiff alleges that "there are no recorded assignments of the Plaintiff's Deed of Trust from First Magnus to multiple classes of the CWHL 2006-3 Trust within 30 days of the January 31, 2006 closing date..." (ECF No. 1 ¶ 98).

Defendants contend that the statute of limitations for a TILA damage claim is "within one year from the date of the occurrence of the violation." (ECF No. 13 at 16). Defendants contend that the statute of limitation is triggered when the borrower enters into the loan agreement with the creditor. Defendants contend that according to Plaintiff's Complaint, the first assignment of her Deed of Trust took place in 2011 and Plaintiff filed the this lawsuit on August 20, 2014. Defendants contend that as such, her claim fails because the statute of limitations ran over two years ago.

Defendants further contend that Plaintiff's Deed of Trust explicitly states that the Deed of Trust may be sold without notice, and Plaintiff otherwise fails to plead the elements necessary to maintain a cause of action under TILA. (ECF No. 13-1 at 14).

Defendants contend that Plaintiff fails to plead detrimental reliance on any allegedly inadequate disclosure –a necessary element of any claim for actual damages based upon an alleged TILA violation. 15 U.S.C. § 1640(a).

Plaintiff does not address Defendants' contentions in her opposition to Defendants' Motion to Dismiss. *See* ECF No. 16.

In *King* v. California, 784 F.2d 910 (9th Cir. 1986), The Court of Appeals held:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but ... the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*King*, 784 F.2d at 915. "Equitable tolling is generally applied in situations where the claimant ... has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (quotation omitted).

The transaction at issue was consummated on November 17, 2005. (ECF No. 1 ¶ 20). The Complaint was filed on August 20, 2014, after the one-year limitations period had expired. (ECF No. 1). The Court finds that Plaintiff's TILA claim falls outside of the one year limitations period. The Complaint fails to allege any facts to support equitable tolling in this case. Plaintiff's claim for violation of TILA is dismissed.

### VI. Violation of the Uniform Electronic Transaction Act ("UETA") (Sixth Claim)

Plaintiff's sixth claim alleges violations of the Uniform Electronic Transaction Act ("UETA"). Plaintiff alleges that "Defendants, *et al.*, violated USC § 15-96-1-7003 and did not execute the proper recordings as required by law." (ECF No. 1 ¶ 236. "The misfeasance, malfeasance and nonfeasance by the Defendants, *et al.*, have slandered title to the Plaintiff's property." *Id.* ¶ 237.

1   Defendants contend that Plaintiff fails to allege facts to support a claim that
2   Defendants violated the statute. Defendants contend that Plaintiff vaguely asserts that
3   Defendants "did not execute the proper recordings as required by law." (ECF No. 1 ¶
4   236).
5   The only references made to the UETA in Plaintiff's Complaint alleges that
6   "...any electronic transfers of the Plaintiff's Deed of Trust that may have been executed
7   without recording within the Official records of the San Diego County Registry are void
8   pursuant to the Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003."
9   (ECF No. 1 ¶¶ 115, 146).
10      15 U.S.C. § 7001 states:
11      (a) In general
12          Notwithstanding any statute, regulation, or other rule of law (other than this subchapter and subchapter II of this chapter), with respect to any
13          transaction in or affecting interstate or foreign commerce–
14      (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic
15      form; and
16      (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was
17      used in its formation.
18  15 U.S.C. § 7001.  15 U.S.C. § 7003 states:
19      (a) Excepted requirements
20          The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by–
21
22      (3) the Uniform Commercial Code, as in effect in any State, other than sections 1-107 and 1-206 and Articles 2 and 2A.
23  15 U.S.C. § 7003.
24   The sections of the statute cited by Plaintiff establish only that a contract or
25  record that is governed by the "Uniform Commercial Code, as in effect in any State,
26  other than sections 1-107 and 1-206 and Articles 2 and 2A" are excepted from the
27  general rule of section 7001 that "a contract relating to [any transaction in or affecting
28  interstate or foreign commerce] may not be denied legal effect, validity, or

1  enforceability solely because an electronic signature or electronic record was used in
2  its formation." *See* 15 U.S.C. § 7001, 7003.  Plaintiff fails to allege sufficient facts to
3  infer that Defendants violated 15 U.S.C. section 7003.  Plaintiff's claim for violation
4  of the UETA is dismissed.

## IV.    CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's Petition is GRANTED.  (ECF No. 13).  Plaintiff may file a motion for leave to amend within thirty (30) days of this Order.  If no motion is filed, Clerk will close the case.

DATED:  January 7, 2015

*[signature: William Q. Hayes]*

**WILLIAM Q. HAYES**
United States District Judge